Action instituted 5 October, 1936, to recover for wrongful death.
The uncontroverted facts are: Elmer Albert Slate died on 7 August, 1936, as a result of a wound in the upper part of the left shoulder ranging down, inflicted by a gun in the hands of and fired by the defendant. Girlie Slate is the duly appointed and qualified administratrix of Elmer Albert Slate. At the time of his death, and for several months prior thereto, Elmer Slate had been working on the farm with, and residing in the home of, the defendant. The home, a dwelling, is two stories in front and one story in the back. The front door opens into a *Page 837 
hallway from which a door leads into a room on each side. The stairway to the second floor is located on the left of the hallway, just back of the door to the left front room, and 4 feet from the front door. The defendant, his wife and small child, slept in the right front room, and Elmer Slate slept in the room above. There is a porch on the front and a walkway leading to the road, 45 or 50 feet away. There is a window in the front of the room in which defendant slept opening on to the porch. The front door was partly glass.
Plaintiff alleged and contended that on the night of 7 August, 1936, about 9 o'clock, plaintiff's intestate had gone out of the house to the front yard and as he was returning and entering the front door to go up the stairway to his room, the defendant carelessly, negligently, willfully, and in reckless disregard of the life of the intestate, shot and killed him; that defendant was negligent in failing to make proper inquiry to ascertain the identity of the intestate; that he failed to exercise the care of a reasonably prudent person under the circumstances in that, knowing that the intestate was accustomed to use the front door in going to and from his room, and after observing intestate, he failed to call out to him in an audible tone; in that he failed to strike a match or light a lamp; and in that he became unduly alarmed and acted too hastily. The plaintiff offered testimony tending to show that intestate was shot as he entered the front door; that the defendant admitted that he shot the intestate, and that upon being asked on the second day thereafter, while the intestate was a corpse, "What did you kill him for?" he replied: "The Lord had me kill him."
The defendant in his answer denied the material allegations of the complaint, and alleged and offered evidence tending to show that on the night in question the intestate and defendant and his family retired about 8 o'clock; that a rain and windstorm came up about 9 o'clock, and the defendant went upstairs and called to the intestate to pull down the window; that at that time intestate was in bed; that defendant then went back to his room and to bed; that later, about midnight, he was awakened by his wife, who informed him that someone was at the window on the porch; that he then got up and went out in the hall to the front door and saw a person going down the walkway toward the road; that this person turned and came back toward the house, and on seeing him coming, defendant secured his gun and as the person came into the door he called to him to "Stop — halt"; that on receiving no answer and seeing the person creeping toward him, he fired; that he thought the person was a burglar; that he had no reason to think that the intestate was out in the yard; and that if intestate was a sleep-walker, he had no knowledge of it. *Page 838 
The case was submitted to the jury on the following issues:
"1. Was the death of the plaintiff's intestate caused by the wrongful acts of the defendant, as alleged in the complaint?
"2. If so, did the defendant willfully and maliciously cause the death of plaintiff's intestate, as alleged in the complaint?
"3. What amount, if any, is the plaintiff entitled to recover of the defendant?"
The jury answered the first issue "No."
From judgment on the verdict plaintiff appealed to the Supreme Court, and assigned error.
The record fails to disclose reversible error. Exceptions to portions of the charge are untenable. When read as a whole, the charge fairly presents the case to the jury. Defendant's version of the circumstances under which the intestate came to his untimely death was accepted by the jury. However regrettable the occurrence be, the verdict finds the defendant without fault.
We have considered all exceptions.
In the trial we find
No error.